IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)
Case No. 1:26-cv-21610-CMA

ZOHRA KHORASHI,

Plaintiff,

vs.

CHARTWELL LAW OFFICE, LLP,

Defendant.

______________________________________/

**Plaintiff's Response to Defendant's**
**<u>Motion to Dismiss Complaint</u>**

Plaintiff, Zohra Khorashi, responds as follows to Defendants' Motion to Dismiss Plaintiff's Complaint with Incorporated Memorandum of Law (Doc. 17), filed April 20, 2026.

## <u>Introduction</u>

Plaintiff Zohra Khorashi, a Muslim Pakistani attorney, brings this action against her former employer, Chartwell Law Offices, LLP, for discrimination based on her race, national origin, and religion, and for retaliation, in violation of 42 U.S.C. § 1981 and the Florida Civil Rights Act of 1992 ("FCRA"). Complaint, ¶ 1[1].

[1] Chartwell's suggestion that Plaintiff's separate action against Gadi Beer (Chartwell's former CEO and someone who still potentially holds equity in the firm) and Beth Gellman Beer, *Khorashi v. Beer et al.,* Case No. 25-cv-23202-JB (S.D. Fla.), is inconsistent with her claims in this case misunderstands basic pleading principles. The two cases are legally complementary, not contradictory: the Beers are alleged to have engineered the doxing campaign, while Chartwell is liable for exploiting it as pretext to act on pre-existing discriminatory animus already evidenced by Plaintiff's demotion seven months earlier and its stated discomfort with how her social media posts about Gaza would be perceived by Jewish clients and employees. Multiple actors may each bear independent liability for their respective contributions to a plaintiff's harm, and alternative theories of liability are expressly permitted at the pleading stage. *See* Fed. R. Civ. P. 8(d)(2). Chartwell cannot launder its termination decision into a lawful act simply because a third party, who conveniently happens to be Chartwell's former CEO, is alleged to have helped set in motion the "climactic triggering event" cited as the reason for the decision.

Plaintiff was employed by Chartwell as an associate attorney from September 2018 until her termination on February 29, 2024. Complaint, ¶¶ 13, 5. Over the course of her employment, Plaintiff alleges that she was subjected to a documented pattern of unequal treatment, including the deliberate withholding of work assignments given to non-Muslim and non-Pakistani associates, Complaint, ¶ 14, escalating retaliation following her complaints of discrimination to Human Resources beginning in October and November 2022, Complaint, ¶¶ 15-20, a pretextual demotion to part-time status in July 2023 that bypassed Chartwell's own four-step disciplinary procedure, Complaint, ¶¶ 42-43, and ultimately, her summary termination on February 29, 2024, less than twenty-four hours after a third-party doxing campaign targeted her pro-Palestinian social media posts. Complaint, ¶¶ 93-94. Throughout this period, Chartwell took no disciplinary action against non-Muslim and non-Pakistani employees, including its own General Counsel and a founding partner, who engaged in comparable or more inflammatory social media activity. Complaint, ¶¶ 101, 109-112.

Defendant's Motion to Dismiss argues that Plaintiff's five-count Complaint should be dismissed with prejudice in its entirety on the grounds that: (1) the Complaint is an impermissible shotgun pleading; (2) Section 1981 does not cover national origin discrimination; (3) Plaintiff fails to allege intentional discrimination or identify valid comparators; and (4) Plaintiff cannot establish protected activity or causation on her retaliation claims. As set forth herein, each of these arguments fails. The Complaint clearly gives Chartwell notice of the claims against it, the facts supporting those claims are drawn directly from Plaintiff's own employment history, and the allegations, taken as true, plausibly support every element of each cause of action under the applicable Rule 12(b)(6) standard.

**Applicable legal Standards**

On a Rule 12(b)(6) motion, courts must be mindful that the Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)(2)). The complaint need only give defendants fair notice of the claims and the grounds on which they rest. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This liberal pleading standard does not require a plaintiff to plead every element with particularity. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). While factual allegations must raise the right to relief above the speculative level, *Twombly*, 550 U.S. at 555, they need only cross the line from conceivable to plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). The plausibility standard is satisfied where the complaint raises a reasonable expectation that discovery will reveal evidence supporting the claim. *Twombly*, 550 U.S. at 556, and dismissal is warranted only where it is clear that no relief could be granted under any set of facts consistent with the allegations. *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000).

The *Twombly* plausibility standard also permits pleading "upon information and belief" where the belief is grounded in factual allegations that make the inference of culpability plausible. *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc., No.* 12-80393-CIV, 2013 WL 1176252, at *3 (S.D. Fla. Mar. 20, 2013) (citing *Iqbal*, 556 U.S. at 678). The mere inclusion of allegations pleaded on information and belief is not a basis for dismissal. *Latele Television C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539-CIV, 2013 WL 1296314, at *11 (S.D. Fla. Mar. 27, 2013) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). This is especially true where the relevant facts are peculiarly within defendants' possession or control. *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022).

Complaints alleging discrimination must "meet the 'plausibility standard' of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. App'x 935, 937 (11th Cir. 2011). As the court recently noted in *Lewis v. Noem*,

> This means that they must offer "sufficient factual matter" to reasonably infer intentional discrimination. *Henderson*, 436 Fed. App'x at 937. A plaintiff may provide sufficient factual content using "either direct evidence or circumstantial evidence to show . . . discrimination." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). Fundamentally, "[a]t the pleading stage, a plaintiff must plausibly allege that (1) his employer took an adverse employment action against her, and (2) her age 'was the 'but-for' cause of the employer's adverse action.' " *Dawson v. Wal-Mart Stores E., LP*, 160 F. Supp. 3d 1303, 1306 (N.D. Ala. 2016) (emphasis removed) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).

*Lewis v. Noem*, 2026 WL 104075 at *7 (S.D. Fla. April 17, 2026).

The court in *Lewis* further emphasized the differences between the standards for assessing discrimination claims under Rule 12(b)(6) and Rule 56:

> In assessing a . . . discrimination claim based on circumstantial evidence, plaintiffs may proceed under the *McDonnell Douglas* burden-shifting framework or the convincing mosaic framework. *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011). However, the *McDonnell Douglas* framework is an evidentiary standard that sets the burden of proof for ***summary judgment***, not the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Indeed, the Supreme Court has been clear: "This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id*. at 511. Instead, the fundamental burden on the plaintiff at the motion to dismiss stage is to "provide enough factual matter (taken as true) to suggest intentional...discrimination." *Davis v. Coca-Cola Bottling Co. Consol*., 516 F.3d 955, 974 (11th Cir. 2008). The emphasis is on whether the complaint "plausibly suggest[s]" intentional discrimination. *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015).

*Lewis v. Noem*, 2026 WL 1040475, at *10 (emphasis added).

<u>**Argument**</u>

**1. The Complaint is not an impermissible shotgun pleading**

A complaint should put a defendant on notice as to the claims against it and how each claim is connected to the complaint's factual allegations. *See Embree v. Wyndham Worldwide Corp*.,

779 F. App'x 658, 663–64 (11th Cir. 2019). A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count" *Id*. The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading." *Weiland*, 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co*., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). The rules were also written for the benefit of the court, which must be able to determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether evidence introduced at trial is relevant. *Id*. (quoting *T.D.S.*, 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)).

Under Eleventh Circuit precedent, there are four primary categories of shotgun pleadings: (1) a "complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint that [is] ... replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separate[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants

the claim is brought against." *Weiland,* 792 F.3d 1313, 1321–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323.

The Complaint for Damages in this case does not fall into any of the four impermissible categories under *Weiland*. It coherently sets forth Plaintiff's factual allegations in a logical order, most of the paragraphs are limited to less than five sentences, and despite Chartwell's characterization of the Complaint as a "sweeping political and social narrative," none of the factual allegations refer to unrelated issues or circumstances. Plaintiff enumerates each of her five causes of action, cites the relevant statutes, and summarizes her claims in her prayer for relief. *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count ..."). Each of the five causes of action are separately pled in different counts, and while each count admittedly incorporates the same factual allegations, it cannot be argued that Plaintiff has failed to give adequate notice of the claims against Defendant or the grounds upon which each claim rests.

As this Court held in *Moore v. University of Miami*, 2025 WL 886977, at *3 (S.D. Fla. March 21, 2025), the Complaint "does not make it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief[,]' and Defendant demonstrates its understanding of the relevant facts connected to each claim throughout its Motion." (citations omitted). Because Defendant points to no specific confusion as to "which facts support which claims," its shotgun pleading argument should be rejected as a basis for dismissal.

**2. Plaintiff has asserted a proper basis for her claims under 42 U.S.C. 1981**

In Count I of the Complaint, Plaintiff alleges Defendant violated 42 U.S.C. § 1981 by discriminating against her based on race when it treated her differently than non-Asian attorneys whose social media postings openly violated the Firm's policies. Count II raises an additional claim for retaliation under 42 U.S.C. § 1981 based on the adverse actions to which Ms. Khorashi was subjected after she formally complained to Human Resources in November 2022 about alleged racial and religious discrimination by Chartwell Partner Derek Lloyd and Associate Attorney Victoria Godwin. The Court should reject Defendant's arguments that Plaintiff's Asian ancestry cannot support the claims under 42 U.S.C. § 1981 and that Counts I and II are subject to dismissal because Ms. Khorashi raises a separate claim at Count III for discrimination based solely on her Pakistani national origin under the Florida Civil Rights Act. *See* Motion to Dismiss, at 5.

More fundamentally, Chartwell's argument ignores controlling Supreme Court precedent that specifically rejects the notion that only modern scientific definitions of race govern the statute's reach. In *St. Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987), the Supreme Court interpreted 42 U.S.C. § 1981 to forbid intentional discrimination based on "ancestry or ethnic characteristics," whether or not those characteristics "would be classified as racial in terms of modern scientific theory." The Court made clear that groups which nineteenth-century Americans understood as distinct racial or ethnic stocks, including Arabs, Jews, and other groups that modern science might classify as Caucasian, fall within Section 1981's protections: "Plainly, all those who might be deemed Caucasian today were not thought to be of the same race at the time § 1981 became law." *Id*. at 610, 107 S.Ct. at 2026–27*Id*. at 610-12.

South Asians, including individuals of Pakistani descent and ancestry, share a distinct and historically recognized ethnic and ancestral identity that falls squarely within the *Al-Khazraji* framework. *See, e.g., Touzout v. Am. Best Car Rental KF Corp*., No. 15-61767-CV, 2017 WL 1957185, at *13 (S.D. Fla. May 11, 2017) ("[i]f Plaintiff can show that he was 'subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion,' he will have made out a case under § 1981." (citing *St. Francis College*).

The Complaint specifically pleads that Plaintiff is "among the person[s] protected under 42 U.S.C. § 1981" based on her "Asian ancestry and Pakistani national origin." Complaint, ¶ 6. The reference to "Asian ancestry" is a deliberate and legally significant pleading choice that invokes the *Al-Khazraji* ancestry analysis, not merely national origin. At the Rule 12(b)(6) stage, where all factual allegations are taken as true, this allegation is sufficient to survive dismissal. Chartwell's argument that the Court must resolve as a matter of law, at the pleading stage, whether Pakistani ancestry constitutes a cognizable ethnic classification under Section 1981 asks far more than Rule 12(b)(6) requires or permits.

**3. Plaintiff has alleged all the required elements on her claims for race, national origin and religious discrimination under 42 U.S.C. § 1981 the FCRA**

As another division of this Court recently reaffirmed in *Lewis v. Noem*, 2026 WL 1040475, at *10 (S.D. Fla. April 17, 2026), the *McDonnell Douglas* burden-shifting framework "is an evidentiary standard that sets the burden of proof for summary judgment, not the motion to dismiss stage," and the Supreme Court has expressly held that its prima facie requirements "do not apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). Chartwell's arguments regarding comparators, but-for causation, and discriminatory intent are thus more appropriately addressed at

summary judgment, not here. The sole question before this Court is whether the Complaint plausibly suggests intentional discrimination. It does, across multiple independent theories.

The Complaint alleges a documented pattern of differential treatment predating the Gaza conflict by over a year. Beginning in September 2018 and continuing through her demotion, Plaintiff alleges that she was consistently denied the same opportunities afforded to non-Muslim and non-Pakistani associate attorneys to attend hearings, take depositions, and interact with clients, despite meeting her billable hour requirements and receiving no documented performance criticism. Complaint, ¶ 14. When she raised this disparity, along with other complaints of unfair treatment and preference given to a white female co-worker, with supervising partner Derek Lloyd in September 2022, he dismissed her concerns without explanation. Complaint, ¶ 15. On the contrary, Lloyd retaliated to her complaints by falsely accusing her of fabricating allegations and threatening her with a Performance Improvement Plan that bypassed Chartwell's own four-step disciplinary procedure. Complaint, ¶¶ 18-19. He then used his influence to freeze Plaintiff out of assignments from other partners. Complaint, ¶ 22. She then formally complained to Human Resources in November 2022 about discrimination and retaliation. Complaint, ¶ 20. Despite receiving at least ten follow-up emails from Plaintiff documenting discrimination, retaliation, and fraudulent billing practices, HR failed to investigate or take any remedial action. Complaint, ¶ 24.

The pretextual nature of Chartwell's stated reasons for the adverse actions against Plaintiff is affirmatively demonstrated within the four corners of the Complaint.

When Plaintiff was notified of her demotion in July 2023, she was advised by HR that unnamed partners found her work unsatisfactory and were no longer willing to assign her cases, yet Jennifer Majewski could not produce a single specific example of poor work product when Plaintiff asked for one. Complaint, ¶ 35-37. At the same time Chartwell claimed there was

insufficient work for Plaintiff, it publicly posted a LinkedIn job opening for a general liability associate in the very Miami and Deerfield Beach offices where Plaintiff worked. Complaint, ¶ 26. The Complaint further alleges that the demotion was imposed in direct violation of Chartwell's own four-step progressive Disciplinary Procedure, without any documented performance deficiencies in Plaintiff's personnel file and without the written Performance Action Plan required at Step 2 of that process. Complaint, ¶¶ 19, 43.

Chartwell's stated reasons for Plaintiff's termination -- that her social media posts violated firm values and made Jewish employees feel unsafe – is also contradicted by its own prior conduct. Prior to the doxing attack on February 28, 2024 that Chartwell cited as the "climactic triggering event" that caused her termination, Chartwell had reviewed every one of Plaintiff's social media posts since October 2023 and never informed her that any post violated firm policy or could result in disciplinary action. Complaint, ¶¶ 64, 70, 91. Yet the Firm terminated her within twenty-four hours of a third-party doxing campaign, without any independent investigation, based on posts it had already reviewed and cleared. Complaint, ¶¶ 93-94. Furthermore, the firm's own General Counsel, Michelle Greenberg, the very person disciplining Plaintiff for social media content was herself engaging in more inflammatory anti-Muslim social media activity with zero consequences. Ms. Greenberg was simultaneously liking, celebrating, and sharing LinkedIn posts, where she represented herself as Chartwell's general counsel, describing pro-Palestinian students as "sh*t for brains," content implying all Muslims and Palestinians were terrorists by reference to the September 11 attacks, and content condemning the American Bar Association for including Islamophobia alongside antisemitism in a statement opposing hate. Complaint, ¶ 101. Like Plaintiff, Michelle Greenberg was later doxed for her postings which resulted in similar, if not worse, social media criticism of Chartwell, yet Chartwell took no disciplinary action against Ms.

Greenberg. Complaint, ¶ 112. And, if it claims it did, it is evident the disciplinary action was clearly disparate, as Greenberg is still employed with Chartwell.

In addition to Michelle Greenberg, Founding partner Andrew Greenberg (no relation) posted memes on X, where in the bio he made it clear he was employed by Chartwell Law, comparing Donald Trump to Adolf Hitler, referencing a Biden assassination of Trump, and containing sexually crude political content, posts that by any measure violated the same facially neutral social media policy, and likewise faced no consequences. Complaint, ¶¶ 109-112. Chartwell dismisses Andrew Greenberg's his anti-Trump posts as "completely unrelated to the Israel-Gaza conflict." But that misses a crucial point: the social media policy at Chartwell (¶49) is facially neutral and prohibits content "harmful to Chartwell Law, its employees, or clients" and violations of the "code of conduct." The Complaint makes clear allegations supported by facts that Defendant's "reputational harm" rationale for terminating Plaintiff was applied selectively and only to a Pakistani Muslim. This selective application of Chartwell's "values" rationale exclusively against Plaintiff, while ignoring materially similar conduct by non-Muslim and non-Pakistani employees, plausibly supports an inference of intentional discrimination based on religion and national origin that is more than sufficient at the pleadings stage under Rule 12(b)(6).

**4. Plaintiff's allegations regarding comparator evidence are sufficient under Rule 12(b)(6)**

Because a Title VII complaint need not allege facts sufficient to make out a *McDonnell Douglas* prima facie case, *see Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025), it follows, then, that a plaintiff can satisfy the Rule 8(a) pleading requirements without making specific allegations concerning the existence of a similarly situated comparator. *See Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 756–58 (11th Cir. 2021) (holding the district court erred in finding that plaintiff "had not stated a claim of race discrimination under Title VII because she had

not identified a comparator"); *Walker v. Love's Travel Ctr.*, No. CV 17-0298, 2017 WL 4931693, at *2–3 (S.D. Ala. Oct. 31, 2017) (explaining that allegations regarding the existence of a comparator are unnecessary at the motion to dismiss stage because a plaintiff may establish a prima facie case of Title VII discrimination, and even liability, without reference to a comparator).

Although not required by Rule 12(b)(6), Plaintiff has alleged comparator evidence at Paragraphs 95, 100-102, 106-112 of the Complaint, based on Chartwell's failure to take any disciplinary action against Michelle Greenberg or Andrew Greenberg for their social media posts.

**5. The complaint sufficiently alleges protected activity and causation on Plaintiff's claims for retaliation under 42 USC § 1981 and the FCRA**

Plaintiff's retaliation claim at Count II arises under 42 U.S.C. § 1981 while the claim at Count IV arises under the Florida Civil Rights Act. Due to the different statutes of limitations, Count II would include any retaliatory acts that occurred after March 11, 2022, while the FCRA retaliation claim at Count IV encompasses any reprisal that occurred within 365 days prior to the filing of Khorashi's charge of discrimination with the EEOC on April 17, 2024. *See* Complaint, at ¶ 9.

It is well-established that 42 U.S.C. § 1981 encompasses race-based retaliation claims in the employment context, *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 455, 457 (2008), and has the same requirements of proof and analytical framework as claims brought under Title VII of the Civil Rights Act of 1964 and the FCRA. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 n.14 (11th Cir. 2011). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) suffered an adverse employment action; and (3) there is some causal relationship between the two events. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). If the plaintiff does so, and the employer proffers a legitimate, nondiscriminatory reason for its actions, then the plaintiff must show that the reason

given is pre-textual and that retaliation was a but-for cause of the adverse action. *Brown v. Ala. Dep't of Transp*., 597 F.3d 1160, at 1181-82 (11th Cir. 2010) (citation omitted).

The Motion to Dismiss argues that the retaliation claims are subject to dismissal because Plaintiff's alleged "concerns regarding workplace management decisions, billing practices by other attorneys, perceived bullying by co-workers, Chartwell's failure to acknowledge Muslim holiday, and most significantly, the monitoring of her personal social media activity" were "not directed at unlawful race, national origin or religious discrimination within the meaning of the statutes." Motion to Dismiss, at 17. Defendant further asserts that the temporal proximity between the alleged protected activity and Plaintiff's termination is too attenuated and that any causal link was broken by Ms. Khorashi's own conduct when she continued to engage in social media activity that "Chartwell warned her might be considered insulting." *Id*., at 17-18.

Chartwell's retaliation argument mischaracterizes the Complaint by treating it as a single, temporally remote retaliation claim based on Plaintiff's termination. In fact, the Complaint alleges two distinct and independently sufficient retaliation claims, each with its own protected activity, timeline leading to adverse action and causal connection.

<u>Paragraphs 14-46 of Complaint (demotion claim)</u>: In these 32 paragraphs, Plaintiff alleges that beginning in September 2022, Plaintiff personally advised her supervisor, Chartwell Partner Derrick Lloyd, of her concerns about his unequal distribution of work assignments favoring non-Pakistani and non-Muslim attorneys and the perception shared by herself and other "women of color" that they were being singled out for bullying and demeaning treatment by Victoria Godwin, a white female associate attorney in Chartwell's Deerfield Beach Office who was also supervised by Mr. Lloyd.

After Mr. Lloyd pushed back on her concerns and declined to discuss the issues, beginning in November 2022, Plaintiff submitted multiple written complaints to HR Director Jennifer Majewski regarding alleged discrimination and subsequent retaliation by Mr. Lloyd and Ms. Godwin. Following her complaints, Derek Lloyd used his influence as Equity Partner to systematically freeze Plaintiff out of work assignments from other partners, engineering a work shortage designed to force her into part-time status. Complaint, at ¶¶ 22-23. The Complaint further alleges that Defendant deviated from its own policies by failing to investigate or take any remedial measures for several months despite Plaintiff's additional reports of ongoing retaliation from Derrick Lloyd and others. In addition to failing to investigate her complaints, Jennifer Majewski ultimately directed Plaintiff to apologize to the very partner she had accused of discrimination. Complaint, at ¶¶ 24-27.

After submitting at least ten follow up complaints to HR and participating in several Zoom calls with Jennifer Majewski and other Chartwell partners about her complaints that continued into June 2023, Plaintiff alleges that she was demoted to part-time status on July 1, 2023, based on an undocumented contrived false narrative from unnamed "equity partners" about her alleged performance deficiencies. *See* Complaint, ¶¶ 42-43. Jennifer Majewski was directly involved in this demotion decision and had full knowledge of all of Plaintiff's prior protected complaints. *See* Complaint, at ¶¶ 30, 34-35, 42.

Following her demotion, Plaintiff had conversations with several Chartwell attorneys in the Atlanta office about her discrimination complaints and was told that "higher ups" in the Firm were discouraging them from assigning work to Plaintiff due to her issues in Florida. The attorneys she spoke with in the Atlanta office (Douglas Burrell, Karen Karabinos and Robert

Luskin) also speculated that Chartwell may have been trying to "force her out" by blocking any work assignments from the Atlanta partners. Complaint, at ¶¶ 44-46.

Under the pleading standards of Rule 12(b)(6), the Court should find that Plaintiff engaged in protected activity under 42 U.S.C. § 1981 as alleged at Count II of the Complaint when she met with Derek Lloyd in late September 2022 to discuss unfair distribution of assignments and perceived workplace bullying of women of color by her white co-worker, and when she filed a formal written complaint raising the same issues with HR in November 2022. This protected activity continued over the next several months into early June 2023 as she submitted multiple emails to HR requesting an update on any investigation and advising Jennifer Majewski of ongoing retaliation from Derek Lloyd as he froze her out of potential work after threatening to demote her when he first learned that she had escalated her complaints to HR. Any protected activity after April 17, 2023, would also support the retaliation claim under the FCRA at Count IV.

Although Defendant does not address the demotion as a stand-alone claim in its Motion to Dismiss, if the Court agrees that Plaintiff has sufficiently alleged ongoing protected activity based on her complaints and interactions with HR from November 2022 until June 2023, the temporal proximity of just two-weeks between Ms. Khorashi's last Zoom meeting with Jennifer Majewski on June 16, 2023 and her demotion on July 1, 2023 is more than sufficient to support an inference of causation under both 42 U.S.C. §1981 and the FCRA.

<u>Paragraphs 60 to 70 of the Complaint (termination claim)</u>. In these ten paragraphs, Plaintiff describes meetings and conversations that occurred in January 2024 between herself, Chartwell Founding Partners Charles Barreras and Tom Stromets, Jennifer Majewski and General Counsel Michelle Greenberg, regarding Plaintiff's social media postings in support of the Palestinians in Gaza. Complaint, ¶¶ 60-65. During a second meeting on January 18, 2024, Ms. Greenberg

confronted Plaintiff about a post that had appeared on her Instagram page a few days earlier, where Ms. Khorashi condemned the rising death toll among Palestinian civilians. Complaint, ¶ 67.

After disagreeing with Ms. Greenberg's conclusion that the post in question could be construed as offensive by the "other side" – which Plaintiff interpreted as a reference to the Jewish people – Ms. Khorashi complained to Ms. Greenberg and Jenifer Majewski that she was being singled out for scrutiny of her social media posts because she was a "Pakistani Muslim" speaking out about Palestinian deaths in Gaza, and that other members of the Firm who posted social media content supporting the position of Israel and the IDF were treated more favorably. *See* Complaint, at ¶¶ 68-69.

On February 29, 2024, just six weeks after the January 18 meeting, Plaintiff was notified of her termination in a Zoom call with Chuck Barreras, Michelle Greemberg and Jennifer Majewski. *See* Complaint, at ¶¶ 94-99. This is well-within the temporal proximity sufficient to support an inference of causation based on Plaintiff's protected activity on January 18, 2024.

In *Santana v. Telemundo Network Group*, LLC, 2026 WL 180272, at *10 (11th Cir. Jan. 22, 2026), the Eleventh Circuit reversed the dismissal of plaintiff's retaliation claims where "[t]aking the factual allegations as true and drawing reasonable inferences in Santana's favor—as the Rule 12(b)(6) standard requires—the amended complaint plausibly alleged that individuals with authority over her employment took adverse actions because she engaged in protected activity." Because Khorashi has also plausibly alleged the elements of a *prima facie* claim for retaliation sufficient to withstand dismissal under Rule 12(b)(6), the Court should reject Defendant's attempts to reframe the retaliatory termination claim by arguing that it is based on Plaintiff's political advocacy on her social media regarding the Gaza conflict and her opposition to perceived genocide, which does not constitute protected activity under 42 U.S.C. § 1981 or the

FCRA, and that any "belief that she was opposing unlawful conduct is objectively unreasonable as a matter of law." *See* Motion to Dismiss, at 15. Chartwell's argument that continued social media activity broke the causal chain fails because Plaintiff was never told any post violated firm policy. Complaint, ¶¶ 64, 70, 91. She was only advised to be "mindful." Complaint, ¶ 64. Chartwell had itself reviewed the very posts featured in the doxing and found no violations prior to February 28, 2024. Complaint, ¶¶ 76, 91. Conduct never identified as a policy violation cannot constitute an intervening act sufficient to break the causal chain.

## **CONCLUSION**

On a motion to dismiss under Rule 12(b)(6), the Court's task is not to resolve factual disputes but to determine whether Plaintiff's allegations, taken as true, state a plausible claim. Based on the well-pled allegations of Plaintiff's Complaint (Doc. 1) and the legal authorities and arguments cited herein, Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 17) should be DENIED.

Respectfully submitted,

*Christopher C. Sharp*
Christopher C. Sharp, Esq.
Fla. Bar No. 996858
EMail: csharplaw@aol.com
Secondary: chris@csharplawfirm.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246

*Omar Mustafa Saleh*
Omar Mustafa Saleh, Esq.
Fla. Bar No. 091216
Email: osaleh@cair.com
Secondary: saleh@floridalegalconsulting.com
Syed Ahmed Ali Khan, Esq.
Florida Bar No. 061470
Email: akhan@cair.com
Secondary: akanew@yahoo.com
COUNCIL ON AMERICAN ISLAMIC RELATIONS
9000 N.W. 44TH Street, Suite 200
Sunrise, FL 33351
Phone: (954) 272-0490

Dated: May 6, 2026 Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

By: *Christopher C. Sharp*
Christopher C. Sharp, Esq.

Christopher C. Sharp, Esq.
E-Mail: csharplaw@aol.com
Secondary Email: chris@csharplawfirm.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246

Omar Mustafa Saleh, Esq.
Email: osaleh@cair.com
Syed Ahmed Ali Khan, Esq.
Email: akhan@cair.com
COUNCIL ON AMERICAN ISLAMIC RELATIONS
9000 N.W. 44TH Street, Suite 200
Sunrise, FL 33351
Phone: (954) 272-0490

Pedro J. Torres-Díaz, Esq.
Email: pedro.torres-diaz@jacksonlewis.com
Ranjiv Sondhi, Esq.
Email: ranjiv.sondhi@jacksonlewis.com
JACKSON LEWIS P.C.
1 SE 3rd Avenue, Suite 2300
Miami, Florida 33131
Telephone: (305) 577-7600